**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Crim. No. 11-173M |
| AARON LAWLESS, | : | |
| Defendant | : | |

...oooOooo...

**GOVERNMENT'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
ON GROUNDS THAT THE STOLEN VALOR ACT IS UNCONSTITUTIONAL**

The United States of America, by and through Rod J. Rosenstein, United States Attorney for the District of Maryland, and Hollis Raphael Weisman, Assistant United States Attorney, opposes the defendant's Motion to Dismiss on Grounds that the Stolen Valor Act is Unconstitutional, and submits the following Memorandum of Law in support of its position.

*INTRODUCTION*

*A.     Background of the statute.*

The defendant has been charged by criminal complaint with one count of violation of 18 U.S.C. § 704, popularly known as the Stolen Valor Act of 2005. The statute consists of two parts. Sec. 704(a) prohibits the wearing or purchase of military service medals, unless the wearing or purchase of the medals has been authorized by the armed forces. That section of the statute, in substantially the same form, has been around since at least 1923. *See* Act of February 24, 1923, ch. 110, 42 Stat. 1286, formerly codified at 10 U.S.C. § 1425. Sec. 704(a) is not the part of the statute at issue here.

1

Paragraph (b) of § 704 was enacted in 2005. That is the part of the statute that this defendant is charged with. It provides:

> Whoever falsely represents himself or herself, verbally or in writing, to have been awarded any decoration or medical authorized by Congress for the Armed Forces of the United States, any of the service medals or badges awarded to the members of such forces, the ribbon, button, or rosette of any such badge, decoration, or medal or any colorable imitation of such item

is guilty of an offense. The maximum period of imprisonment is six months. 18 U.S.C. § 704(b).

Paragraph (d) of the statute establishes an enhanced penalty of one year imprisonment if the offense involves certain medals, including a Silver Star[1] and a Purple Heart.[2]

When Congress passed the Stolen Valor Act of 2005, it found, "Fraudulent claims surrounding the receipt of . . . decorations and medals awarded by the President or the Armed Forces of the United States damage the reputation and meaning of such decorations and medals." 120 Stat 3266 (2005). It further found that "Legislative action is necessary to permit law enforcement officers to protect the reputation and meaning of military decorations and medals." *Id.*

**B.   *Facts of the case.***

The government expects the evidence to show that the defendant enlisted in the Army on March 23, 2005. He was sent to Iraq as an infantryman. On July 9, 2006, The defendant was evacuated from Iraq when he developed serious headaches. He eventually ended up at Walter Reed Army Medical Center in the District of Columbia for treatment of his headaches. He

---

[1] The award known as the silver star is authorized by 10 U.S.C. § 3746.

[2] The award known as the Purple Heart is authorized by 10 U.S.C. § 1129.

turned out to have a pre-existing brain lesion, and had surgery to relieve what was diagnosed as a posterior fossa mass on July 10, 2006.  (Appendix A)  Doctors discharged him about a week later.  He continued to be treated at Walter Reed.

      The defendant received an honorable discharge from the Army on September 23, 2008.  His discharge record, known as a "DD form 214," gave the reason for separation as "disability, permanent," and indicated that he had retired.  The form also correctly set forth the defendant's rank – infantryman – and listed his awards:  Army commendation medal, Army good conduct medal, National Defense Service Medal, Global War on Terrorism service medal, and army service ribbon.

      While in the Army, the defendant received no Purple Hearts, silver stars, or bronze stars of any kind.

      Before leaving the Army, while he was in the D.C. Area for treatment at Walter Reed, the defendant began working part-time at Atlantic Guns, a licensed firearms dealer, in Silver Spring, Maryland.  He told co-workers and acquaintances that he had received several Purple Hearts, a silver star and two bronze stars with "V" devices.[3]  He said he had been wounded four times, the last after being struck by an improvised explosive device and ending up with shrapnel in his brain.  As a result of his fictions, a representative for Glock, Inc. soliticted the defendant to apply for the annual Glock Hero Award.  The defendant wrote a biography and sent it to Glock.  (Attachment C)  Consequently, Glock gave the defendant the award.  It included a gift of two Glock handguns, a crystal trophy, and a trip for the defendant and his wife to Las Vegas, where a

---

[3] The "V" device on a bronze star stands for "valor," and may or may not be part of the award.

ceremony honoring the defendant occurred. During the ceremony, the defendant posed in front of a large poster depicting all the medals he claims to have received. (Attachment B) Another, informal, ceremony also occurred at the Glock Days event at Atlantic Guns.

In early 2010, as a result of an unrelated prosecution in the U.S. District Court in Nebraska, officials of the Veterans Administration became aware that the defendant had been making fictitious claims about his military record. They confirmed that the defendant never received any Purple Hearts, silver stars or bronze star. Nor was he a sergeant who led troops into combat. Nor had he ever experienced combat injuries. The awards he received indicated that he had done a satisfactory job in the Army and while in a war zone.

## ARGUMENT

The defendant has moved for dismissal of the complaint on the ground that the statute, 18 U.S.C. § 704 contravenes the First Amendment right to freedom of speech. His argument is flawed. Congress has the right to prohibit the false statements in these circumstances.

*A..*     *The false statements in this case are not protected by the First Amendment.*

   *1.    Congress may prohibit some forms of false statements where the public interest in the prohibition outweighs the chilling effect.*

The First Amendment says, "Congress shall make no law . . . abridging the freedom of speech. . . ." And although freedom of speech has been held to encompass broad categories of expressive conduct, "the right of free speech is not absolute at all times and under all circumstances." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571, n. 2 (1942) (Citations omitted.) False statements, furthermore, are not protected by the First Amendment. The Supreme Court emphasized in *Hustler Magazine v. Falwell*, 485 U.S. 46, 52 (1988), "False

4

statements of fact are particularly valueless; they interfere with the truth-seeking function of the marketplace of ideas. . . ." *See also Herbert v. Lando,* 441 U.S. 153, 171 (1979) ("Spreading false information in and of itself carries no First Amendment credentials."); *Gertz v. Welch*, 418 U.S. 323, 340 (1974) ("[N]either the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust and wide-open' debate on public issues.  They belong to that category of utterances which 'are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'"  (Citations omitted.))

Congress was within its rights to ban the false statements in this case.  False statements are subject to First Amendment protection only when prohibitions on such statements would result in a chilling effect on protected speech.  For example, in *Gertz v. Welch,* 418 U.S. at 340-41, the court noted that "punishment of error runs the risk of inducing a cautious and restrictive exercise of the constitutionally guaranteed freedoms of speech and press. . . . .  The First Amendment requires that we protect some falsehood in order to protect speech that matters."  Despite that recognition, however, to the court held that the Constitution does not protect libelous statements about non-public figures.  *Id. a*t 344-46.  *Gertz* found that the balancing of interests between Congress's right to ban those false statements and the chilling effect such a ban might have on free speech weighed in favor of the prohibition.  *Id.*

Again, in *United States v. Stevens,* – U.S. –, 130 S. Ct.. 1577, 1586 (2010), the Supreme Court reiterated that whole categories of speech fall "fully outside the protection of the First Amendment. . . ."  The balancing of factors determines whether the false speech is protected.  *Id.*

## 2. *Numerous instances of Congressional prohibition of false and fraudulent statements have been judicially upheld.*

The Stolen Valor Act is not unique. Numerous federal statutes prohibit the making of false statements or representations. For example, the government regularly brings prosecutions under 18 U.S.C. § 1001. That law prohibits anyone who knowingly and willfully "makes any materially false, fictitious, or fraudulent statement or representation" concerning a matter within the jurisdiction of the government. In *Brogan v. United States*, 522 U.S. 398, 403-404 (1998), the Supreme Court confirmed that "the statute forbids *all* the deceptive practices described." (Citation omitted.) Affirming the constitutionality of the statute, the court pointed out that Congress had demonstrated an intent "to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described [in the statute]." (Citation omitted) *Id.* at 403. Therefore, the deceptive statements and representations are not protected by the First Amendment.

Similar false statements and representations have been made unlawful by other criminal laws. They include 18 U.S.C. § 1011, which prohibits knowingly making any false statement relating to the sale of any mortgage or federal land bank; 18 U.S.C. § 1015, which prohibits knowingly making a false statement under oath relating to a naturalization or citizenship matter; and 18 U.S.C. § 1027, which prohibits knowingly making a false statement or representation concerning ERISA matters. There is a presumption of constitutionality concerning laws passed by Congress, and courts should be hesitant to invalidate statutes. *United States v. Morrison*, 529 U.S. 598, 607 (2000) ("Due respect for the decisions of a coordinate branch of Government

demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds.")

### 3,   *The Stolen Valor Act is presumptively constitutional.*

The Stolen Valor Act is limited in scope.  It does not prohibit all false representations. Section 704(b) deals only with someone who knowingly falsely represents that he or she has been awarded a military medal or decoration that Congress has authorized.  As stated above, false statements of fact fall outside the protection of the First Amendment.  Nothing that falls under the prohibition of the Stolen Valor Act would contribute to the "uninhibited marketplace of ideas."  *Gibson v. Mayor and Council of the City of Wilmington*, 355 F.3d 215, 228 (3d. Cir. 2004).  Moreover, the prohibition of false statements about receipt of military awards does not contribute to chilling protected speech.

The prohibition in this case is fundamentally different from those that courts have declared protected under the first amendment.  The Supreme Court recognized that a person who complains about a public official – a matter of public interest – might be discouraged from making such a complaint by fear of liability if his claims are deemed false.  For that reason, the Supreme Court has protected such speech, to promote robust debate on matters of public concern.  *New York Times v. Sullivan*, 376 U.S. 254,  271-274, 278-279 (1964).

## B.   *Congress has balanced the interests at stake in passing the Stolen Valor Act.*

### 1.   *The Stolen Valor Act does not chill free speech.*

The Stolen Valor Act prohibits only a single falsity – a false representation of having been received a medal or award.  Such a subject is not one open to debate.  The truth is easily ascertainable.  There is, therefore, no real possibility that the prohibition would chill anyone from

7

publicizing the fact that a medal was actually awarded. "Untruthful speech, commercial or otherwise, has never been protected for its own sake." *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 771 n. 24 (1976). When Congress passed the Stolen Valor Act, it engaged in balancing the interests, and concluded that "Legislative action is necessary to permit law enforcement officers to protect the reputation and meaning of military decorations and medals." 120 Stat 3266 (2005).

Congress appropriately determined that it had a compelling interest in preventing the harm to the military that results from false claims of military awards. Its venerable power to "provide for the common Defence of the United States," to "raise and support Armies," and to "make Rules for the Government and Regulation of the land and naval Forces" are written in Art. I § 8 of the Constitution.

The predecessor to the Purple Heart award originated in 1982, when George Washington ordered the award of a "figure of a heart in public cloth" – known as a military merit badge – to honor those who demonstrated "unusual gallantry." *United States v. Alvarez*, 617 F.3d 1198, 1233 (9th Cir. 2010) (Bybee, J., dissenting); *United States v. Perelman*, 737 F. Supp. 2d 1221, 1236 (Nev. 2010). General Washington warned, "Should any, who are not entitled to the honors have the insolence fo assume the badges of them, they shall be severely punished." *General Orders of George Washington Issued at Newburgh on the Hudson, 1782-1783,* at 34-35, quoted in *United States v. Alvarez*, 617 F.3d at 1234-35 (Bybee, J., dissenting) Washington also wrote, "On the other hand, it is expected these gallant men who are thus distinguished will, on all occasions, be treated with particular confidence and consideration." GEORGE WASHINGTON, REVOLUTIONARY ORDERS OF GENERAL WASHINGTON 228 (New York, Wiley & Putnam 1844).

Thus, protection of the reputation and value of military honors has an ancient history. The government thanks and recognizes members of the military who risk their lives on behalf of the people of the United States. It is, therefore, appropriate for the government to ban people who have never received such honors and awards from making false claims that they did so.

### 2. *There is no consensus among the courts that have considered the issues brought up by the defendant.*

Few courts have considered the issue raised by the defendant since the Stolen Valor Act was passed in its present form. The first to do so was the District Court for the District of Colorado. In *United States v. Strandlof*, 746 F. Supp. 2d 1183 (Colo. 2010), the district judge found the statute violated the First Amendment. The government appealed, and the case is currently pending in the Court of Appeals for the Tenth Circuit. *United States v. Strandlof,* Docket No. 10-1358.

In *United States v. Perelman,* 737 F. Supp. 2d 1198 (Nev. 2010), the district court denied the defendant's motion to dismiss the provision of the Stolen Valor Act that criminalized unauthorized wearing of military medals, 18 U.S.C. § 704(a). The court found that the purpose of awarding military medals and decorations, to recognize excellence within the military, is consistent with the government's "clearly important and substantial" "interest in motivating military personnel to high levels of performance. . . ." *Id.* at 1238. "Such an interest is also, as the government notes, 'wholly unrelated to the suppression of speech.'" *Id.*

Another district judge upheld 18 U.S.C. § 704(b) in a still-pending case in the western district of Virginia. In *United States v. Robbins*, 759 F. Supp 2d 815 (W.D.Va. 2011), the court held that the statute was intended to punish false claims of receipt of military medals when made

"knowingly and with an intent to deceive." *Id.* at 819. In finding no First Amendment violation, the court noted that the statute punished "only outright lies, not ideas. . . ." *Id.*

The district judge continued, "Properly limited, the speech restricted by the Stolen Valor Act is not 'speech that matters' and falls outside the protection of the First Amendment." *Id.* The court analyzed those cases, some of which are discussed above, that find restrictions on speech to be unconstitutional, and concluded, "there is no likelihood that a political majority would be able to use the law to censor legitimate speech or discriminate based on a particular viewpoint. This is not the sort of regulation that threatens to suppress particular ideas." *Id.* at 821-21.

The only appellate court that has considered the issue is the Ninth Circuit, in *United States v. Alvarez*, 617 F.3d 1198 (9th Cir. 2010). In the face of a strong dissent, the divided court compared the statute to fraud laws, and concluded that the law was insufficiently narrowly tailored to prevent fraud.

That court, however, in comparing the Stolen Valor Act to some laws designed to stop fraud, ignored the many other laws that have no intent requirement, such as 18 U.S.C. §§ 1001, 1011, 1015 and 1027, discussed above. The dissent, moreover, noted that the opinion ignored "the clarity and consistency of the Supreme Court's insistence that false statements of fact. . . generally fall outside First Amendment protection. . . ." *Id.* at **?** (Bybee, J., dissenting).

### 3.     *The Stolen Valor Act is narrowly tailored*

The statute here is narrowly tailored to achieve its aims. It prohibits false statements that relate only to awards. If the defendant had limited his tales to his false claims that he was a war hero who saved lives despite his wounds, he would not have run afoul of the law. "Rhetorical

hyperbole" would not violate the law.  *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970).  But when the defendant claimed, verbally and in writing, that he had actually won extraordinary awards that are properly given only to deserving service members, he violated the law in the precise manner addressed by Congress in the Stolen Valor Act.

### *CONCLUSION*

For the reasons stated, the government prays that the defendant's Motion to Dismiss be denied.

> Respectfully submitted,
>
> Rod J. Rosenstein
> United States Attorney for the
>  District of Maryland
>
>
> /s/
> _____
> Hollis Raphael Weisman
> Assistant United States Attorney
> Bar No. 11465
> United States Courthouse
> 6500 Cherrywood Lane, Room 400
> Greenbelt, Maryland  20770
> 301-344-4029; 301-344-4029 (fax)
> hollis.weisman@usdoj.gov